CHARLES GASS, Respondent, v. LOUIS S. WETMORE and Another, Copartners, Trading under the Name of L. S. WETMORE Co., Defendants, Impleaded with BENJAMIN R. KITTREDGE, Appellant.

First Department, June 2, 1933.

*R. Randolph Hicks* of counsel [*Lloyd F. Thanhouser* and *Ernest F. Staub* with him on the brief; *Satterlee & Canfield*, attorneys], for the appellant.

*Joseph R. Jackson* of counsel [*John J. Curtin* and *Wesley S. Sawyer* with him on the brief; *John J. Curtin*, attorney], for the respondent.

O'MALLEY, J. Plaintiff, as assignee of Joseph C. Trainer and John A. Trainer, copartners doing business in the city of Philadelphia under the name of Edward Trainer, has recovered judgment against the defendant, appellant, Kittredge, individually, and as a member of the L. S. Wetmore Co., an alleged partnership, doing business in the State of California. The defendant Louis S. Wetmore, the other alleged member of the Wetmore Co., was not served.

The judgment is predicated upon the breach of an express warranty of quality in the sale of wine known as California sherry. The contract of purchase and sale was made by written agreement in October, 1920, in which the L. S. Wetmore Co. was designated as seller and plaintiff's assignor, herein designated plaintiff, as purchaser. The wine was to be used by the purchaser in the manu-

facture of medicinal tonics. It contained between nineteen and twenty per cent alcohol, but the plaintiff's assignor was possessed of a basic permit which permitted its purchase for the purpose indicated.

The contract has been fully executed and the full purchase price paid. The jury's verdict imports a finding of a breach of warranty which survived acceptance and notice of such breach within a reasonable time after delivery.

The complaint contained alternative causes of action, (1) a sale by the Wetmore Co., of which Kittredge was a partner; or (2) a sale by Kittredge as principal through the Wetmore Co. as his agent.

It is contended by the respondent that the evidence was sufficient to sustain a verdict upon either theory; that it was ample to warrant a finding that Kittredge was a partner in the Wetmore Co., at least by estoppel, if not in fact; and if not such a partner, that he was a principal and the actual seller through the Wetmore Co. as his agent.

The plaintiff proceeded upon the theory that the purchase and sale were legal and that all lawful permits required in the transaction had been obtained. Having assumed this burden in his complaint, it was incumbent upon him to establish such allegations by competent proof.

The case was submitted to the jury upon the theory that the defendant Kittredge might not be held liable individually unless he possessed the required permit. It was further charged that there was no evidence in the case that Kittredge himself had a permit to sell and that he, therefore, could not be personally held, unless the evidence showed " that he was acting for or through L. S. Wetmore Co., who did have a permit or permits, or that the L. S. Wetmore Co. performed its part of the contract as the seller by furnishing and delivering the liquor through the Bradford Companies, which also had a permit or permits." The Bradford companies and their participation in the transaction will be referred to hereafter.

It is obvious from this and other portions of the charge, when considered as a whole, that the jury were properly instructed in the rule of law as laid down by the Court of Appeals and by this court (Adler v. Zimmerman, 233 N. Y. 431; Lundy v. Orr, 205 App. Div. 296), that no recovery could be had by the plaintiff herein, unless both the purchaser and seller were possessed of the requisite legal permits.

The verdict was general in character. It is, therefore, impossible to determine upon which of the two theories adopted by the plaintiff liability was imposed upon the defendant. The judgment itself adds confusion as it runs against him not only as a member of the partnership but also in his individual capacity.

However, in the view we take it is not necessary to decide whether the judgment must be reversed on the theory of inconsistency in verdict within the purview of authorities relied upon by the appellant (*Goldstein* v. *Cornwall*, 215 App. Div. 402; *Jennings* v. *Degnon Contracting Co.*, 165 id. 248; *Thompson* v. *Peterson*, 152 id. 667), for the reason that we are of opinion that plaintiff failed to establish a legal and binding contract of purchase and sale so far as the appellant is concerned.

Kittredge, as already noted, was sought to be held on the theory that he was the actual seller as principal, or liable by virtue of being a partner with Louis S. Wetmore in the Wetmore Co. Being himself without a permit in his own name he may not be held unless the Wetmore Co. possessed the requisite permit and that such would in the circumstances inure to his benefit; or that the so-called Bradford companies had permits that would so inure under the law as laid down in the charge. That Kittredge himself had no permit was well known to plaintiff's assignors. His own evidence was to the effect that Kittredge said that he wanted to avoid " any mixup with the Prohibition Laws."

The requirement as to permits relates not only to executed but to executory contracts. (*Tench* v. *Lawson*, 225 App. Div. 198; *Panto* v. *Kentucky Distilleries & Warehouse Co.*, 215 id. 511; *Boer* v. *Garcia*, 118 Misc. 272, 273; affd., 208 App. Div. 841; 240 N. Y. 9; *Kahn* v. *Rosenstiel*, 298 Fed. 656.) Assuming, without conceding, that the L. S. Wetmore Co. itself had a proper permit, the evidence affords no basis for a finding that Kittredge himself was covered thereby. The L. S. Wetmore Co., it should be noted, was a trade name under which Louis S. Wetmore was doing business individually according to a certificate filed in the State of California. In this certificate Kittredge was not mentioned.

If for the moment the L. S. Wetmore Co. be deemed the agent of Kittredge, the permit issued to such agent would not cover the principal. On the other hand, if Kittredge be deemed liable as a partner in the L. S. Wetmore Co., the latter's permits would not inure to his benefit. The record fails to show that the Wetmore permits or the applications therefor ever disclosed that Kittredge was interested therein, either individually or as a partner.

During the times in question there were in full force and effect certain regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury. So far as material, they were substantially as follows: " Regulations 60. Sec. 6. *All* persons desiring to manufacture, sell  *  *  * deliver, furnish,  *  *  * purchase, possess or use intoxicating liquor for the nonbeverage purposes herein authorized must procure permits therefor in the manner hereinafter prescribed.  *  *  *

" Sec. 8. Persons desiring to procure any permit required by these regulations * * * must submit application for permit * * * clearly setting forth all the data required by the regulations. * * *

" Sec. 11. The full names of individuals must be signed to every application. In case of a copartnership the firm name must be written, followed by the signature of the partner authorized to sign for the firm. _The names of all members of the copartnership must appear in the application._"

In addition to the foregoing, section 14 of Regulations 60 provided that where any person was appointed to act in a fiduciary capacity for any permitee, copy of the application and permit was to be surrendered to the director and by him amended to show the name of such person and the permit was then to authorize such person in his fiduciary capacity to conduct the acts thereby authorized.

Section 15 of the same regulations provided that all permits issued were non-transferable. It was further provided: " Sec. 20. _All_ persons desiring to obtain permits provided by these regulations * * * must at or before the time of filing application therefor, file with the Director a bond * * * to insure compliance with the provisions of this act and of these regulations * * *.

" Sec. 21. * * * The full names of individual principals and sureties and the residence of each must be legibly written * * * in the heading of the bond. In the case of a copartnership, the trade name of the firm, _together with the names of all the members thereof_, must be given." (Italics ours.)

These regulations, it is quite apparent, were closely drawn to the end that the authorities might learn with exactitude the person and residence of one to whom a permit to traffic in intoxicating liquors might be issued. The clear purpose was to exclude every possible chance of an undesirable or improper person obtaining under the guise of legality such alcoholic liquors for the purpose of diverting them from their legal and authorized use. It is quite clear that such purpose could easily be subverted were an undisclosed principal, a silent partner, or an unnamed fiduciary, entitled to protection under a permit issued to and obtained by another party.

These regulations above noted certainly do not transcend the authority given by the National Prohibition Act (U. S. Code, tit. 27, § 4, subd. 7). They are clearly in conformity with the purpose of such act and carry out the intent of its provisions. The regulations, therefore, have the force and effect of law. (_DeLuca_ v. _Stone_, 45 F. [2d] 846; _Shapiro_ v. _Lyle_, 30 id. 971; _Daeuffer-Lieberman Brewing Co._ v. _United States_, 36 id. 568; _Herrman_ v. _Lyle_, 41 id. 759.)

The purpose of the Prohibition Act was to suppress the entire traffic condemned by the act and it should, therefore, be liberally construed to the end of such suppression, which construction, moreover, is provided for in its very terms. (U. S. Code, tit. 27, § 12, National Prohibition Act; *Danovitz* v. *United States*, 281 U. S. 389.) Giving the act this liberal construction in view of the regulations above referred to, we are of opinion that Kittredge may not be held liable as a vendor, either as a principal, disclosed or undisclosed, or as a partner, silent or open, in fact, or by estoppel.

In the circumstances, therefore, the plaintiff failed to sustain the allegations of his pleading that proper permits were possessed by Kittredge. He failed to show, therefore, a legal purchase from Kittredge. Not shown to have been legal, the purchase was illegal. (*Adler* v. *Zimmerman, supra; Lundy* v. *Orr, supra.*) No recovery can be had under such circumstances.

So, too, with respect to the Bradford companies referred to in the court's charge. A partnership originally known as J. B. Bradford & Sons, and which at the times here in question was a corporation known as J. B. Bradford Properties, Inc., owned a winery in California. There was evidence to the effect that it was represented on behalf of the Wetmore Co., and Kittredge, during the negotiations for the contract and during its execution, that this winery, which had discontinued active operations, was being financed by them. In making deliveries to Trainer, the Wetmore Co. obtained a bill of sale for a quantity of the wine from Bradford. This bill of sale so made was then assigned by Wetmore to Trainer. Under such bill and by permits obtained therefor, deliveries were made to Trainer. One of the Bradfords, a member of the partnership, by deposition read at the trial, denied that Kittredge or Wetmore had any financial interest in either the partnership or the corporation. On the other hand, it is contended by the respondent that Kittredge and Wetmore in fact did have such interest. However, assuming, without conceding, that the sale and delivery of this Bradford wine was made pursuant to proper permits, and, therefore, legal, as between the Wetmore Co. and Trainer, it follows that such permits could not inure to the benefit of Kittredge for the same reason that the Wetmore permit could not so inure.

It follows, therefore, that the judgment must be reversed, with costs, and the complaint dismissed, with costs.

FINCH, P. J., MERRELL, SHERMAN and TOWNLEY, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.